IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.: 23 cv 3065<br>) |
| MARSHALL INVESTIGATIVE GROUP, INC. and CATHLEEN AND STEVE CIESLAK, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Crum & Forster Specialty Insurance Company ("CFSIC"), by and through its undersigned counsel, as and for its Complaint for Declaratory Judgment against Marshall Investigative Group, Inc. ("Marshall") and Cathleen and Steve Cieslak ("Cieslaks"), states as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. In this action, CFSIC seeks a determination of its rights and obligations under an insurance policy issued to Marshall in connection with an underlying lawsuit filed by the Cieslaks, which asserts certain claims against Marshall.

## JURISDICTION AND VENUE

2. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states and the amount in controversy exceeds $75,000,

exclusive of interests and costs.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) as certain defendants reside in the Northern District of Illinois and the events at issue took place in the Northern District of Illinois.

5. Plaintiff CFSIC is a corporation organized and existing under the laws of Delaware, with its principal place of business in New Jersey. At all relevant times, CFSIC was authorized to conduct business in the State of Illinois.

6. Defendant Marshall is a corporation organized and existing under the laws of Illinois, with its principal place of business in Park Ridge, Illinois.

7. Defendant Cathleen Cieslak is an adult individual who is a resident and citizen of Illinois.

8. Defendant Steve Cieslak is an adult individual who is a resident and citizen of Illinois.

9. The Underlying Action (as defined herein) is pending in the Circuit Court of DuPage County, Illinois.

10. CFSIC issued a policy of insurance to Marshall, as described more fully below.

11. Defendant Marshall has sought coverage under said policy for the claims asserted against it in the Underlying Action.

12. The scope of the coverage available to the Defendant Marshall is governed by the terms, conditions, and exclusions of the policy.

13. Plaintiff CFSIC does not assert any claims against Defendants Cathleen Cieslak Steve Cieslak in this Complaint and they have been named as defendants in this action solely as necessary parties.

## THE UNDERLYING ACTION

14. A lawsuit captioned *Cathleen Cieslak and Steve Cieslak, v. Marshall Investigative Group, Inc.*, Case No. 2019 L 00364, was filed by the Cieslaks in the Circuit Court of DuPage County, Illinois (the "Underlying Action").

15. On March 30, 2023, a Corrected First Amended Complaint in the Underlying Action (the "Complaint") was filed against Marshall and seeks compensatory, injunctive and punitive relief under the Illinois Eavesdropping Act, 720 ILCS 5/14-1 *et seq.*, and common law claims of invasion of privacy and public disclosure of private facts due to Marshall's alleged violation of the Illinois Eavesdropping Act. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

16. Count I of the Complaint, entitled "Violation of the Illinois Eavesdropping Act, 720 ILCS 5/14-1 et seq.," alleges that Defendant Marshall improperly surveilled, videotaped and recorded the Cieslaks, without their permission or consent, while Cathleen Cieslak was at various doctors' appointments, shopping and engaged in private and privileged conversations with Steve Cieslak and while Cathleen Cieslak entered a secured entrance at her place of employment during October 2022. Ex. A., ¶¶ 10-13, 16, 20, 28.

17. It is also alleged that Marshall publicly disclosed private facts and publicized facts to third parties about the private lives and privileged communications of the Cieslaks, including Cathleen Cieslak's attendance at her hematology/oncology, surgery and urology doctor appointments, which had nothing to do with her underlying personal injury claims against a supermarket that had retained Defendant Marshall's services. Ex. A, ¶¶ 22-28.

18. The Complaint alleges that, as a result of Defendant Marshall's violation of the Illinois Eavesdropping Act, the Cieslaks have become paranoid about the intrusion into their

private lives, afraid to leave their home, frightened about nearby parked cars, anxious while in public, constantly looking over their shoulders and having public conversations. Ex. A., ¶ 29.

19. The Complaint further alleges claims for Invasion of Privacy (Count II) and Public Disclosure of Private Facts (Count III) based on Defendant Marshall alleged violation of the Illinois Eavesdropping Act. Ex. A., ¶¶ 33, 34.

20. The Complaint seeks relief in the form of compensatory damages in an amount in excess of $30,000.00, injunctive relief and punitive damages and costs.

## THE POLICIES

21. Plaintiff Crum & Forster Specialty Insurance Company issued a commercial general liability insurance policy (the "Policy"), effective December 1, 2021 to December 1, 2022, to Marshall. A true and correct copy of the Policy is attached hereto as **Exhibit B**.

22. The Policy provides Commercial General Liability Coverage subject to limits of liability of $1 million Each Occurrence; $1 million Personal and Advertising Injury Limit, with a $3 million general aggregate. Ex. B (CF004).

23. Coverage A under the Commercial General Liability Part of the Policy provides, in pertinent part, as follows:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit' seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

* * *

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

* * *

Ex. B (CF009).

24. Coverage A under the Commercial General Liability Part of the Policy includes the following pertinent exclusions:

 **2.** **Exclusions**

  This insurance does not apply to:

* * *

  **o.** **Personal And Advertising Injury**

   "Bodily injury" arising out of "personal and advertising injury".

* * *

  **q.** **Recording And Distribution Of Material Or Information In Violation Of Law**

   "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

  **(1)**   The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

  **(2)**   The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

  **(3)**   The Fair Credit Reporting Act (FCRA) and any amendment of or addition to such law, including the Fair and Accurate Transaction Act (FACTA); or

  **(4)**   Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendment and additions, that address, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

* * *

Ex. B (CF013).

  25. Coverage B under the Commercial General Liability Part of the Policy provides, in pertinent part, as follows:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

 **1.** **Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

* * *

Ex. B (CF014).

  26. Coverage B under the Commercial General Liability Part of the Policy includes the following pertinent exclusions:

 **2.** **Exclusions**

>This insurance does not apply to:
>
>**a.**   **Knowing Violation Of Rights Of Another**
>
>>"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."
>
>>\* \* \*
>
>**d.**   **Criminal Acts**
>
>>"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.
>
>>\* \* \*
>
>**p.**   **Recording And Distribution Of Material Or Information In Violation Of Law**
>
>>"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
>>**(1)**   The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
>
>>**(2)**   The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
>
>>**(3)**   The Fair Credit Reporting Act (FCRA) and any amendment of or addition to such law, including the Fair and Accurate Transaction Act (FACTA); or
>
>>**(4)**   Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendment and additions, that address, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.
>
>>\* \* \*

Ex. B (CF014-CF015).

27. Pursuant to the Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability – With Limited Bodily Injury Exception endorsement to the Policies, the following exclusions were added under Coverage A & B of the Policy:

A. Exclusion **2. p** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** is replaced by the following:

   **2.    Exclusions**

   This insurance does not apply to:

   **p.    Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

   Damages arising out of:

   **(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of non-public information; or

   **(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

   This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

   However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

   As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

  **B.**  The following is added to Paragraph **2. Exclusions of Section I – Coverage B – Personal and Advertising Injury**

    **2.**  **Exclusions**

      This insurance does not apply to:

      **Access Or Disclosure Of Confidential Or Personal Information**

      "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of non-public information.

      This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

      \* \* \*

Ex. B (CF026-CF027).

  28.  Pursuant to the Exclusion – Punitive or Exemplary Damages Endorsement, the following exclusion was added to Coverages A & B of the Policy:

    This insurance does not apply to any claim for punitive or exemplary damages, fines or penalties imposed by law, restitution or any damages which are a multiple of, or in addition to, compensatory damages, including related interests or costs, whether or not such damages, related interest, or costs are characterized as punitive or exemplary damages (hereinafter referred to as punitive or exemplary damages." If a "suit" shall have been brought against the insured for a claim falling within he coverage provided under the Policy, seeking both compensatory and punitive or exemplary damages, then the company will afford a defense to such action, however, the company shall not have an obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

Ex. B (CF039).

  29.  Section V – Definitions of the Policy contains the following relevant definitions:

      \* \* \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

\* \* \*

e. Oral or written publication, in any manner, of material that violate a person's right of privacy. . . .

\* \* \*

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

\* \* \*

Ex. B (CF021-CF023).

## **THIS DISPUTE**

30. Defendant Marshall has sought a defense and indemnity from CFSIC under the Policy in connection with the claims asserted against it in the Underlying Action.

31. CFSIC has determined through its coverage investigation that it owes no obligation under the Policy to defend or indemnify Defendant Marshall in connection with the claims asserted against it in the Underlying Action.

32. CFSIC has advised Defendant Marshall in writing that it disclaims any obligation under the Policies to defend and/or indemnify Defendant Marshall in connection with the claims asserted against it in the Underlying Action.

33. CFSIC now brings this action to obtain a judicial declaration that it owes no duties under the Policies to defend or indemnify Defendant Marshall in connection with the claims asserted against it in the Underlying Action.

## COUNT I
### No Duty to Defend or Indemnify Under Coverage A of the Policy

34. CFSIC incorporates by reference herein paragraphs 1 through 33 as if the same were fully set forth at length.

35. The insuring agreement of Coverage A – Bodily Injury and Property Damage Liability of the Commercial General Liability Part of the Policy provides, in pertinent part, that "[CFSIC] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. Ex. B (CF009).

36. The Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Ex. B (CF021).

37. The Policy defines "property damage" to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." Ex. B (CF023). The Policy's definition of "property damage" further provides that "[f]or the purposes of this insurance, electronic data is not tangible property." Ex. B (CF023).

38. The Complaint does not allege that the Cieslaks sustained "bodily injury" or incurred "property damage," as defined under the Policy, as a result of Defendant Marshall's alleged violation of the Illinois Eavesdropping Act. Rather, the Complaint alleges that Marshall improperly surveilled, videotaped and recorded the Cieslaks, without their permission or consent, and publicly disclosed private facts to third parties about the private lives and privileged communications of the Cieslaks, including Cathleen Cieslak's attendance at various doctor's appointments. Ex. A, ¶¶ 10-28.

39. Accordingly, because the Complaint does not allege that Marshall is liable for "bodily injury" or "property damage" as defined in the Policy, the claims asserted in the Complaint do not fall within the scope of the insuring agreement of Coverage A of the Commercial General Liability Coverage Part of the Policy and, therefore, no coverage is afforded under Coverage A to Marshall for the claims asserted against it in the Underlying Action.

40. To the extent any allegations in the Complaint could be reasonably interpreted as satisfying the requirements of coverage under the insuring agreement of Coverage A, certain exclusions and endorsements contained in Coverage A of the Policy would operate to preclude coverage in this matter.

41. Coverage A of the Policy contains exclusion **o.** which precludes coverage for "[b]odily injury" arising out of "personal and advertising injury." Ex. B (CF013). The Policy defines "personal and advertising injury" to mean, in pertinent part, "injury, including consequential 'bodily injury', arising out of . . . [o]ral or written publication, in any manner, of material that violates a person's right of privacy." Ex. B (CF023).

42. The Complaint alleges that Marshall improperly surveilled, videotaped and recorded the Cieslaks, without their permission or consent, and publicly disclosed and publicized

private facts to third-parties about the private lives and privileged communications of the Cieslaks, including Cathleen Cieslak's attendance at various doctor's appointments, in violation of the Cieslaks' right to privacy coverage for such claims is precluded by operation of the Personal and Advertising Injury Exclusion contained in Coverage A of the Policy.

43. Coverage A of the Policy also contains exclusion **q.**, which precludes coverage for "'bodily injury' or 'property damage' arising directly or indirectly out of any action or omission that violates or is alleged to violate: . . . (4) [a]ny federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." Ex. B (CF013-CF014).

44. The Complaint alleges that, in violation of the Illinois Eavesdropping Act, Marshall improperly surveilled, videotaped and recorded the Cieslaks, without their permission or consent, and publicly disclosed and publicized private facts to third parties about the private lives and privileged communications of the Cieslaks, including Cathleen Cieslak's attendance at various doctor's appointments in violation of the Cieslaks' right to privacy. Ex. A, ¶¶10-28.

45. Accordingly, even if the allegations of the Complaint met the requirements of the insuring agreement of Coverage A, coverage for the claims asserted against Marshall in the Underlying Action would be precluded by operation of the Recording And Distribution Of Material Or Information In Violation Of Law exclusion contained in Coverage A of the Policy.

46. Pursuant to the Exclusion – Access or Disclosure of Confidential or Personal Information and Data-Related Liability – Limited Bodily Injury Exception Not Included endorsement, exclusion **p.** of Coverage A of the Policy was replaced to provide, in pertinent part,

Case: 1:23-cv-03065 Document #: 1 Filed: 05/16/23 Page 14 of 20 PageID #:14

that the insurance does not apply to damages arising out of "[a]ny access to or disclosure of any person's . . . confidential or personal information, including . . . health information or any other type of nonpublic information . . . ."  Ex. B (CF026-CF027).

47. The Complaint alleges Marshall improperly surveilled, videotaped and recorded the Cieslaks, without their permission or consent, and publicly disclosed and publicized private facts to third parties about the private lives and privileged communications of the Cieslaks, including Cathleen Cieslak's attendance at various doctor's appointments, in violation of the Cieslaks' right to privacy. Ex. A. ¶¶ 10-28.

48. Accordingly, even if the allegations of the Complaint met the requirements of the insuring agreement of Coverage A, coverage for the claims asserted against Marshall in the Underlying Action would be precluded by operation of the Access or Disclosure of Confidential or Personal Information and Data-Related Liability – With Limited Bodily Injury Exception endorsement contained in Coverage A of the Policy.

49. Pursuant to the Exclusion – Punitive or Exemplary Damages endorsement, the exclusions section of Coverage A of the Policy was amended to provide, in pertinent part, that the insurance does not apply to "punitive or exemplary damages, fines or penalties imposed by law, restitution or any damages which are a multiple of, or in addition to, compensatory damages including related interest or costs."  Ex. B (CF039).

50. The Complaint seeks relief in the form of punitive damages against Defendant Marshall.

51. Accordingly, even if the allegations of the Complaint met the requirements of the insuring agreement of Coverage A, coverage for the punitive damages relief sought from Marshall

Page 14 of 20

in the Underlying Action would be precluded by operation of the Exclusion -- Punitive or Exemplary Damages endorsement contained in the Policy.

WHEREFORE, Plaintiff Crum & Forster Specialty Insurance Company seeks a judgment that it owes no duty under Coverage A of the Policy to defend or indemnify Defendant Marshall in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

## COUNT II
### No Duty to Defend or Indemnify Under Coverage B of the Policy

52. Plaintiff CFSIC incorporates by reference herein paragraphs 1 through 51 as if the same were fully set forth at length.

53. The insuring agreement for Coverage B – Personal and Advertising Injury Liability of the Commercial General Liability Part of the Policy provides, in pertinent part, that coverage is afforded for those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. Ex. B (CF014). The Policy defines "personal and advertising injury" to mean "injury, including consequential 'bodily injury', arising out of one or more of the following offenses . . . [o]ral or written publication, in any manner, of material that violates a person's right of privacy." Ex. B (CF023).

54. The Complaint alleges Marshall improperly surveilled, videotaped and recorded the Cieslaks, without their permission or consent, and publicly disclosed and publicized private facts to third parties about the private lives and privileged communications of the Cieslaks, including Cathleen Cieslak's attendance at various doctor's appointments, in violation of the Cieslaks' right to privacy. Ex. A, ¶¶ 10-28.

55. To the extent the Complaint does not allege that Marshall "published" private and privileged information about the Cieslaks "in any manner" which violated the right of privacy of the Cieslaks, coverage is not afforded under Coverage B of the Policy.

56. Even if the allegations in the Complaint could be reasonably interpreted as satisfying the requirements of coverage under the insuring agreement of Coverage B of the Policy, certain exclusions and endorsements contained in Coverage B would operate to preclude coverage in this matter.

57. Coverage B of the Policy contains exclusion **a.** which precludes coverage for "personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury." Ex. B (CF014).

58. The Complaint alleges Marshall improperly surveilled, videotaped and recorded the private and privileged actions and conversations of the Cieslaks without their permission or consent in violation of the Illinois Eavesdropping Act. Ex. A, ¶¶ 10-28.

59. Accordingly, even if the allegations of the Complaint met the requirements of the insuring agreement for Coverage B, to the extent Marshall's violations of the Illinois Eavesdropping Act through its collection, recording and distribution of private and privileged information about the Cieslaks was intentional, coverage for the claims asserted against Marshall in the Underlying Action would be precluded by operation of the Knowing Violation of Rights of Another Exclusion contained in Coverage B of the Policy.

60. Coverage B of the Policy contains exclusion **d.** of Coverage B which precludes coverage for "'personal and advertising injury' arising out of a criminal act committed by or at the direction of the insured." Ex. B (CF014).

61. The Complaint alleges that Marshall improperly surveilled, videotaped and recorded the private and privileged actions and conversations of the Cieslaks without their

permission or consent in violation of the Illinois Eavesdropping Act, which is a criminal offense. Ex. A, ¶¶ 28, 33, 42.

62. Accordingly, even if the allegations of the Complaint met the requirements of the insuring agreement for Coverage B, coverage for the claims asserted against Marshall in the Underlying Action would be precluded by operation of the Criminal Acts exclusion contained in Coverage B of the Policy.

63. Coverage B of the Policy contains exclusion **p.** of Coverage B which precludes coverage for "'[p]ersonal and advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate: . . . (4) [a]ny federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." Ex. B (CF015).

64. The Complaint alleges Marshall improperly surveilled, videotaped and recorded the Cieslaks, without their permission or consent, and publicly disclosed and publicized private facts to third parties about the private lives and privileged communications of the Cieslaks, including Cathleen Cieslak's attendance at various doctor's appointments, in violation of the Cieslaks' right to privacy. Ex. A, ¶¶ 10-28.

65. Accordingly, even if the allegations of the Complaint met the requirements of the insuring agreement of Coverage B, coverage for the claims asserted against Marshall in the Underlying Action would be precluded by operation of the Recording And Distribution Of Material Or Information In Violation Of Law Exclusion contained in Coverage B of the Policy.

66. Pursuant to the Exclusion – Access or Disclosure of Confidential or Personal Information and Data-Related Liability – With Limited Bodily Injury Exception endorsement, the exclusions section of Coverage B of the Policy was amended to provide, in pertinent part, that the insurance does not apply to "[p]ersonal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including . . . health information or any other type of nonpublic information." Ex. B (CF026-CF027).

67. The Complaint alleges Marshall improperly surveilled, videotaped and recorded the Cieslaks, without their permission or consent, and publicly disclosed and publicized private facts to third parties about the private lives and privileged communications of the Cieslaks, including Mrs. Cieslak's attendance at various doctor's appointments, in violation of the Cieslaks' right to privacy. Ex. A, ¶¶ 10-28.

68. Accordingly, even if the allegations of the Complaint met the requirements of the insuring agreement of Coverage B, coverage for the claims asserted against Marshall in the Underlying Action would be precluded by operation of the Access or Disclosure of Confidential or Personal Information and Data-Related Liability – With Limited Bodily Injury Exception endorsement contained in Coverage B of the Policy.

69. Pursuant to the Exclusion – Punitive or Exemplary Damages endorsement, the exclusions section of Coverage B of the Policy was amended to provide, in pertinent part, that the insurance does not apply to "punitive or exemplary damages, fines or penalties imposed by law, restitution or any damages which are a multiple of, or in addition to, compensatory damages including related interest or costs." Ex. B (CF039).

70. The Complaint seeks relief in the form of punitive damages against Defendant Marshall.

71. Accordingly, even if the allegations of the Complaint met the requirements of the insuring agreement of Coverage B, coverage for the punitive damages relief sought from Marshall in the Underlying Action would be precluded by operation of the Exclusion -- Punitive or Exemplary Damages endorsement contained in the Policy.

WHEREFORE, Plaintiff Crum & Forster Specialty Insurance Company seeks a judgment that it owes no duty under Coverage B of the Policy to defend or indemnify Defendant Marshall in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

## PRAYER FOR RELIEF

Plaintiff Crum & Forster Specialty Insurance Company hereby respectfully requests the entry of an order and judgment in its favor and against Defendant Marshall Investigative Group, Inc. and Defendants Cathleen and Steve Cieslak, declaring as follows:

a. This Court has jurisdiction over the parties and the subject matter of this litigation;

b. The Policy does not provide coverage to Defendant Marshall for the claims asserted against it in the Complaint filed in the Underlying Action;

c. Crum & Forster Specialty Insurance Company does not owe a duty under the Policy to defend or reimburse defenses costs incurred by Defendant Marshall in connection with the claims asserted against it in the Complaint filed in the Underlying Action;

d. Crum & Forster Specialty Insurance Company does not owe a duty under the Policy to indemnify Defendant Marshall in connection with the claims asserted against it in the Complaint filed in the Underlying Action;

e. Crum & Forster Specialty Insurance Company is entitled to an award of its costs; and

  f.  Such other further relief as this Court deems just and appropriate.

Dated: May 16, 2023

           Respectfully Submitted,

    By: */s/ James J. Hickey*
      James J. Hickey, Atty. No. 6198334
      Amber C. Coisman, Atty No. 6281201
      James.Hickey@kennedyslaw.com
      Amber.Coisman@kennedyslaw.com
      KENNEDYS CMK
      30 S. Wacker Drive, Suite 3650
      Chicago, IL 60606
      Phone: (312) 800-5029
      Fax: (312) 207-2110
      Firm No. 61583

      *Attorneys for Crum & Forster Specialty Insurance Company*